UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal Action No. 11-148 (ESH) |
| LUIS BARAJAS, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Defendant is currently serving an eighty-four-month prison term imposed in July 2011, following a guilty plea to conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine and a detectable amount of marijuana in violation of 21 U.S.C. § 846. Before the Court is defendant's motion to reduce his sentence to seventy-eight months pursuant to 18 U.S.C. § 3582(c) and Amendments 782 and 788 to the United States Sentencing Commission Guidelines Manual ("U.S.S.G."). (Def's Motion to Reduce Sentence, February 4, 2016 [ECF No. 20] ("Def's Mot.").)

For the reasons stated below, the Court finds that defendant is ineligible for a sentence reduction under 18 U.S.C. § 3582(c).

## BACKGROUND

On May 16, 2011, defendant pled guilty to a one-count Information charging him with conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine and cannabis in violation of 21 U.S.C. § 846. (*See* Def's Plea Agreement, May 16, 2011 [ECF No. 4] ("Agreement").) The Agreement provided that defendant could plead guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which permits parties to agree that a "specific sentence or sentencing range is the appropriate disposition of the case." The Rule authorizes a

court to reject the plea agreement's sentence, and in that case, permits a defendant to withdraw his plea; however, when a court accepts the proposed plea agreement, it must sentence the defendant as agreed.

Defendant's crime carried a five-year statutory mandatory-minimum prison term. As stated in the Agreement and the Pre-Sentence Investigation Report ("PSI"), defendant's Guideline range would have been based on a total adjusted offense level of twenty-nine (a base offense level of thirty-two, reduced by three levels for acceptance of responsibility) and a Criminal History Category II. (*See* Pre-Sentence Investigation Report, July 20, 2011 [ECF No. 10], ¶ 77.) This would have resulted in a Guideline range of ninety-seven to 121 months imprisonment, whereas the Rule 11(c)(1)(C) Agreement called for an eighty-four-month sentence.

A plea hearing was held before Magistrate Judge Kay on May 16, 2011. The Magistrate Judge engaged in a plea colloquy with defendant, including informing the parties that, under Rule 11(c)(1)(C), the recommended Sentencing Guidelines would not "come into play" unless this Court were to reject the Agreement's proposed sentence. (Audio Recording, Plea Hearing Before Magistrate Judge Alan Kay, May 16, 2011.) On July 27, 2011, the Court held a sentencing hearing at which it calculated the Guideline range that would apply to defendant, as it is required to do, and then accepted the parties' proposed Agreement under Rule 11(c)(1)(C). The Court imposed the agreed upon sentence of eighty-four months imprisonment, which it deemed "reasonable." (Transcript, Sentencing Hearing Before Judge Ellen Segal Huvelle, July 27, 2011, at 10.)

Effective November 1, 2014, the United States Sentencing Commission amended and lowered the base offense levels for nearly all drug offenses by two points. *See* U.S.S.G., Suppl.

to Appendix C, amend. 782.  Amendment 788 allows courts to retroactively reduce existing sentences for all such drug offenses, beginning November 1, 2015.  *Id.* at amend. 788.  The Government does not dispute that the offense for which defendant was sentenced is covered by the amendments to the Sentencing Commission.  (Gov's Opposition to Motion to Reduce Sentence, March 3, 2016 [ECF No. 22] ("Gov's Opp'n") at 4.)  It also concedes that, under the current Guidelines, which incorporate Amendments 782 and 788, defendant would have had a total offense level of twenty-seven and a Guideline range of seventy-eight to ninety-seven months.  (*Id.*)

On February 4, 2016, defendant filed a motion to reduce his sentence to a prison term of seventy-eight months.  The Government filed its Opposition on March 3, 2016.

## ANALYSIS

Courts are empowered by statute to reduce a defendant's term of imprisonment when the defendant was sentenced pursuant to Sentencing Guidelines that have since been amended:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(c), upon motion of the defendant…the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3552(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

To grant a motion for a sentence reduction under Section 3582(c)(2), a court must determine that the defendant is eligible for the requested reduction.  *Dillon v. United States*, 560 U.S. 817, 827 (2010).  In the D.C. Circuit, a defendant who entered into a Rule 11(c)(1)(C) plea agreement is eligible for a sentence reduction if his sentence was "*based on* a sentencing range that has subsequently been lowered by the Sentencing Commission."  *United States v. Epps*, 707 F.3d 337, 352 (D.C. Cir. 2013) (emphasis added).  The Circuit's *Epps* opinion interpreted the

Supreme Court's plurality decision in *Freeman v. United States*, 131 S.Ct. 2685 (2011), which ruled that a sentence reduction under Section 3582(c)(2) may still be available for sentences imposed pursuant to a Rule 11(c)(1)(C) plea agreement. *See also In re Sealed Case*, 722 F.3d 361, 365 (D.C. Cir. 2013) (stating that *Epps* held that the plurality opinion in *Freeman* "guides [the D.C. Circuit's] determination whether a sentence was 'based on' a subsequently lowered range").

A defendant's sentence is "based on" a subsequently lowered Guideline range "to whatever extent that range was a relevant part of the analytic framework the judge used to determine the sentence." *In re Sealed Case*, 722 F.3d at 368 (quoting *Freeman*, 131 S.Ct. at 2692-93). To that end, the *Epps* Court suggested that district courts focus their inquiry on "the reasons given by the district court for accepting the sentence that was ultimately imposed, not on the parties' agreement." *Epps*, 707 F.3d at 351. In *Epps*, the Court concluded that the district court's statements at the sentencing hearing and the text of the plea agreement supported the conclusion that the defendant's sentence *was*, in fact, based on the relevant Guideline range. *See id.* at 352 (noting that the plea agreement "repeatedly refers to the Sentencing Guidelines as the basis for determining Epps' sentence" and emphasizing the district court's statement that the sentence was appropriate " 'in view of the fact that the crack cocaine guidelines are what they are' " (quoting the district court hearing transcript)).

Since *Epps*, courts in this Circuit have found three sources of evidence for determining the connection between a Rule 11(c)(1)(C) sentence and the Guideline range: sentencing hearings, plea hearings, and the text of the plea agreement. *See, e.g.*, *United States v. Gross*, 2016 WL 410985, at *4-5 (D.D.C. Feb. 2, 2016) (court's remarks during the plea colloquy— "with respect to the sentencing guidelines, I guess we really don't have to discuss the guidelines

4

in any detail, do we, because of your 11(c)(1)(C) agreement"—and at the sentencing hearing that the Guidelines were "irrelevant" showed sentence was not based on Guidelines); *United States v. Moon*, Case No. 10-cr-00051, at *3 (D.D.C. Jan. 28, 2016) (noting that the plea agreement did not mention the relevant Guideline range); *United States v. Santana-Villanueva*, 2015 WL 7274025, at *2 (D.D.C. Nov. 17, 2015) (sentence was not based on Guidelines because the plea agreement only invoked the Sentencing Guidelines "to draw a contrast between what the parties agreed to and the sentence that would be imposed if the Court were to discard that agreement" and because the court made no statement at the sentencing hearing that would suggest the Guidelines affected the sentence); *United States v. Galaviz*, 2015 WL 5442371, at *4 (D.D.C. Sept. 15, 2015) (sentence was based on Guidelines because the court specifically discussed the Guideline range at the plea hearing as a means of justifying the agreed upon sentence).

In this case, the Court is not persuaded that defendant's eighty-four-month sentence was "based on" the existing Guideline range. As the *Epps* Court noted, "the plurality in *Freeman* interpreted § 3582(c)(2) to mean that the focus, even when there is a Rule 11(c)(1)(C) plea agreement, ought to be on the reasons given by the district court for accepting the sentence that it ultimately imposed, not on the parties' agreement." 707 F.3d at 351. At the plea hearing, the Magistrate Judge observed that "the Guidelines don't come into play" and "have no application" in the context of Rule 11(c)(1)(C), unless the Court were to decide to reject the Agreement. (Audio Recording, Plea Hearing Before Magistrate Judge Alan Kay, May 16, 2011.) As the Magistrate Judge explained, courts are required to discuss the Guidelines as a matter of course at such plea hearings, even if the Guidelines have no immediate bearing on the Rule 11(c)(1)(C) agreement:

> Pursuant to the Rule, I'm going to have to mention the Guidelines to Mr. Barajas. And then, we'll come back to the Agreement, Mr. Barajas. So this would only come

> into play if [the Court] does not agree to the Agreement that you have entered into with the government, and notwithstanding that, you decide to not withdraw your plea and go forward with your plea of guilty, in which case, any sentence imposed by [the Court] would involve what we call the Sentencing Guidelines...

(*Id.*) The Magistrate Judge repeatedly dismissed the Guidelines as immaterial to the plea's terms, but mentioned them only to compare the proposed sentence with a scenario in which the Court rejected the Agreement. *See Santana-Villanueva*, 2015 WL 7274025, at *2 (because the Guidelines were invoked "only to draw a contrast between what the parties agreed to and the sentence that would be imposed if the Court were to discard that agreement," the sentence was not "based on" the Guideline range). The plea colloquy here is similar to the district court's statements in *United States v. Gross*, where the court dismissed the Guidelines as "irrelevant" and explained that "with respect to the sentencing guidelines, I guess we really don't have to discuss the guidelines in any detail, do we, because of your 11(c)(1)(C) agreement." *Gross*, 2016 WL 410985, at *4 (quoting district court plea hearing transcript).

Nor do this Court's statements at the sentencing indicate that it accepted the eighty-four-month sentence due to Guidelines calculations. The Court stated: "[T]he sentence that the parties have agreed upon under 11(c)(1)(c)…the Court finds to be reasonable, [and] the Court will sentence 84 months on Count 1." (Transcript, Sentencing Hearing, July 27, 2011, at 10.) Although the Court engaged in a Guideline calculation during the hearing, "this routine and required calculation [does] not mean that the defendant was sentenced 'based on' [] his guideline range." *In re Sealed Case*, 722 F.3d at 366. Unlike *Galaviz*, where the court specifically compared the parties' proposed sentence to the Guidelines and used them as a "relevant part of

the analytic framework," this Court did not integrate its discussions of the 11(c)(1)(C) sentence with its Guideline determination. *Galaviz*, 2015 WL 5442371, at \*4.[1]

Although *Epps* suggests that an inquiry focus on the court's reasons for imposing a sentence and "not the parties' agreement," 707 F.3d at 351, the Agreement itself is worthy of brief examination. It certainly includes calculations of defendant's base offense level under the Guidelines (*see*, *e.g.*, Plea Agreement ¶ 2 ("The parties agree that, based on this relevant conduct, your client's adjusted offense level for Count One under the Sentencing Guidelines, before any adjustment for acceptance of responsibility, is level 32")), but defendant fails to point to any particular provision that ties the agreed upon eighty-four-month prison term to the applicable Guideline range. Nothing in the Agreement compares, for example, with the provision of the *Epps* agreement that recognized that "the sentence in this case will be imposed in accordance with the Guidelines." *Epps*, 707 F.3d at 352. Further, most of the references to the Sentencing Guidelines follow the compare-and-contrast model—they describe the possible consequence of the Agreement being rejected by the Court. *See* Plea Agreement ¶ 1 (referring to the "higher guideline penalties provided for in…the Sentencing Guidelines, if the Rule 11(c)(1)(C) plea is not accepted…"), ¶ 5 ("Should the Court not agree that the sentence agreed

---

[1] The Court was careful to separate the Guideline calculation from the Rule 11(c)(1)(C) sentence:

> THE COURT: I understand it won't affect the calculation. Let me ask you this question: What has been calculated, *putting aside the 11(c)(1)(C)*, is offense level of 29, criminal history of two. That would be the case whether it's Point 2 or Point 3---three points or two points? I'm sorry.
> MS. SLAIGHT: Yes.
> THE COURT: You agree with the calculations that I just announced, 29 and criminal history of two?
> MS. PINEGAR: Your Honor, we think Ms. Slaight's calculation is probably correct…

(Tr., Sentencing Hearing, July 27, 2011, at 4-5) (emphasis added).

upon by the parties is appropriate…[your client will be sentenced] upon consideration of the United States Sentencing Guidelines"); ¶ 14 (laying out the base level offense "[i]f your client is sentenced upon consideration of the Sentencing Guidelines, rather than pursuant to paragraph three of this agreement"); *see also Santana-Villanueva*, 2015 WL 7274025, at *2 (when the Guidelines are invoked to paint a future in which the Rule 11(c)(1)(C) agreement has been *rejected*, such recitations do not inform their materiality to the proposed sentence).

Because the Court finds that defendant's eighty-four-month prison sentence was not "based on" a sentencing range set by the Guidelines, defendant is ineligible for a reduction in his prison sentence.

## CONCLUSION

For the foregoing reasons, defendant's motion to reduce his sentence is denied. A separate Order accompanies this Memorandum Opinion.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: April 5, 2016